IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF TENNESSEE

AT KNOXVILLE

---

Citizens of the United States of America )
                                                                                                                                                                                                                                                                                                                                                                                 )
John Michael Snider, pro se )
                                                                                    )
    Plaintiff, )
                                              )
v. )   Case No. 3:24-cv-394
                                              )
Joseph Robinette Biden Jr., in his official )
capacity as President of the United States )
                                              )
    Defendant )

---

## PRELIMINARY INJUNCTION

### INTRODUCTION

1. Below is a brief statement of the procedural history and the purpose of the order:

Initiation: A lawsuit is filed challenging the President's actions or inactions. This can be brought by individuals, organizations, or other government entities.
District Court: The case is first heard in a federal district court, where the judge evaluates the legal arguments and evidence presented by both sides.
Preliminary Injunction: In some cases, the district court may issue a preliminary injunction to temporarily halt or mandate certain actions while the case is being decided.
District Court Decision: The district court issues a ruling, which may include an order directing the President to take specific executive actions.
Appeals: The decision can be appealed to a federal court of appeals, where a panel of judges reviews the lower court's ruling.
Supreme Court: In some instances, the case may be further appealed to the U.S. Supreme Court, which has the final say on the matter. A notable example is the

Youngstown Sheet & Tube Co. v. Sawyer, Supreme Court 343 U.S. 579, Nos. 744, 745., where the Supreme Court invalidated President Truman's executive order to seize steel mills during the Korean War1.

The purpose of this injunction is to order the President to form a committee of 300, known as the "Olympians," that will establish the maximum economic size of commercial entities to guard against internal and external threats to the function of the United States Constitution. The Olympians are to be composed of the best minds in every applicable field. Olympians are to complete their work in ninety (90) days and produce Executive Orders, Presidential Memoranda, Regulatory Oversight, Legislative Proposals, and Public Advocacy for the President. Olympians will also consider the smooth transition to this new economic order.

## FINDINGS OF FACT

2. Based on recent events outlined in the complaint, the court finds that entities of excessive financial size have undue influence on the proper function of the United States Constitution. These entities have influenced public opinion, interfered with the selection of legislators and presidents, and have colluded with regulatory agencies to the detriment of the citizens of the United States of America.

## CONCLUSIONS OF LAW

3. The court finds that the following laws have been violated by excessively large economic entities:

1. **The Sherman Act (15 U.S.C. §§ 1-7)**: This act outlaws any contract, combination, or conspiracy in restraint of trade and any monopolization, attempted monopolization, or conspiracy or combination to monopolize[12].
2. **The Clayton Act (15 U.S.C. §§ 12-27)**: This act addresses specific practices that the Sherman Act does not clearly prohibit, such as mergers and interlocking directorates (the same person making business decisions for competing companies)[3].

3. **The Federal Trade Commission Act (15 U.S.C. §§ 41-58)**: This act established the Federal Trade Commission (FTC), which is empowered to prevent unfair methods of competition, and unfair or deceptive acts or practices in or affecting commerce[3].

4. **36 CFR § 2.32 - Interfering with agency functions**: This regulation prohibits threatening, resisting, intimidating, or intentionally interfering with a government employee or agent engaged in an official duty[1].

5. **26 CFR Part 1 - Estates, Trusts, and Beneficiaries**: While this part primarily deals with the taxation of estates and trusts, it includes provisions that ensure trusts operate within legal boundaries and do not interfere with government functions[2].

6. **5 CFR Part 2635 - Standards of Ethical Conduct for Employees of the Executive Branch**: This part outlines the ethical standards for federal employees, including prohibitions on conflicts of interest and requirements for disclosing waste, fraud, abuse, and corruption1.

7. **18 U.S.C. § 208 - Acts Affecting a Personal Financial Interest**: This statute requires federal employees to disqualify themselves from participating in matters where they have a financial interest2.

8. **41 U.S.C. § 1905 - Prohibition on Disclosure of Confidential Information**: This statute provides criminal and civil penalties for the unauthorized disclosure of confidential information by federal employees3.

9. **20 CFR Part 438 - Restrictions on Lobbying**: This part restricts the use of appropriated funds for lobbying activities, which can include attempts to influence government officials4.

10. **36 CFR § 2.32 - Interfering with agency functions**: This regulation prohibits threatening, resisting, intimidating, or intentionally interfering with a government employee or agent engaged in an official duty[1].

11. **18 U.S. Code § 595 - Interference by administrative employees of Federal, State, or Territorial Governments**: This statute prohibits interference by administrative employees of various government levels[2].

## Order

4. This court orders the President to form a committee of 300 of the country's best legal, financial, government, business, criminal / organizational behavioral psychologists and academic minds tasked to define the largest permissible size of Retail and Commercial Banks, Internet Banks, Credit Unions, Savings and Loan Associations, Investment Banks and Companies, Crypto-currency Exchanges and similar internet based operations, Brokerage Firms, Insurance Companies, Mortgage Companies, Trusts, Foundations, and combinations of the forgoing

including inter-ownership. This committee is to be called "Olympians". Olympians will provide the president the following:

1. **Executive Orders**: The President can issue executive orders to enforce antitrust laws and promote competition. For example, President Biden's Executive Order on Promoting Competition in the American Economy aims to combat excessive concentration of industry and market power.
2. **Presidential Memoranda**: These are similar to executive orders but generally used for less formal directives. They can be used to instruct federal agencies to take specific actions to prevent monopolistic practices.
3. **Regulatory Oversight**: The President can direct federal agencies, such as the Federal Trade Commission (FTC) and the Department of Justice (DOJ), to rigorously enforce antitrust laws and scrutinize mergers and acquisitions that could lead to excessive market concentration.
4. **Legislative Proposals**: While not an executive action per se, the President can propose new legislation to Congress aimed at strengthening antitrust laws and preventing the formation of monopolies.
5. **Public Advocacy**: The President can use their platform to advocate for fair competition and raise public awareness about the dangers of monopolistic practices.

Olympians will also specify changes to the following:

1. **Leniency Programs**: Offering immunity or reduced penalties to the first entity that reports collusion can incentivize whistle blowing and disrupt collusive arrangements.
2. **Higher Fines and Penalties**: Increasing the financial and legal consequences for collusion can deter entities from engaging in such practices.
3. **Regular Audits and Monitoring**: Implementing regular audits and monitoring of regulatory bodies and the entities they oversee can help detect and prevent collusion.
4. **Transparency and Accountability**: Ensuring transparency ( by limiting classified information status ) in regulatory processes and holding regulators accountable for their actions can reduce the risk of collusion.
5. **Regulation of Mergers**: Preventing mergers that lead to high market concentration can reduce the likelihood of collusion.
6. **Internal Controls and Zero Tolerance Policies**: Establishing a culture of zero tolerance for fraud and internal control breaches within organizations can minimize the chances of collusion.

Olympians are to conclude their work in ninety (90) days of this order.

5. This court orders the president is to assign a special independent auditor/counselor familiar with the function of each executive department to audit each Inspector General of the executive branch. The

court will approve these auditors/counselors. Like the Olympians this work will be completed in ninety (90) days from this order.

6. This court orders the President to use the investigative and prosecutorial powers of the Federal Bureau of Investigation and Department of Justice to find and prosecute those in government who have colluded with outside government entities.

**SO ORDERED.**

**ENTERED:**

_____
**UNITED STATES DISTRICT JUDGE**